# Shickle-Harrison & Howard Iron Company v. Joseph Beck.

1. FELLOW-SERVANTS—*how question as to who are, determined.* The question as to who are fellow-servants is, ordinarily, one of fact.

2. ORDINARY CARE—*how question as to whether plaintiff was in the exercise of, determined.* Ordinarily, the question as to whether the plaintiff was in the exercise of ordinary care is one of fact.

3. PEREMPTORY INSTRUCTION—*when, properly refused.* A peremptory instruction is properly refused where there is evidence fairly tending to sustain the allegations of the plaintiff's declaration.

4. VERDICT—*when, not disturbed.* The Appellate Court will not disturb the judgment of the trial court where the evidence of the successful party considered by itself is clearly sufficient to sustain the verdict.

5. VERDICT—*when declaration will support.* One good count is sufficient to support a verdict. The defendant to avail of the want of sufficient evidence to sustain a part of the counts, should move for an instruction directing the jury to disregard the counts not sustained.

6. INSTRUCT—*master's duty to.* The measure of the master's duty to warn and protect his servant from the dangers incident to his employment must be determined from the circumstances of each case, including the experience or the lack of experience of the servant. It is true the master is under no duty to warn a servant of dangers which are obvious and apparent to one of ordinary intelligence, but in determining what dangers are obvious and apparent, the experience or lack of experience of the servant must be considered.

7. INSTRUCTION—*must not assume disputed facts.* An instruction which assumes facts in dispute, is argumentative and which gives undue prominence to particular evidence, is erroneous, and is properly refused.

Action on the case for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

WISE & McNULTY, for appellant.

WEBB & WEBB and DILL & WILDERMAN, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

Appellant, a corporation, was engaged in manufacturing steel and iron at East St. Louis, Illinois. It has in use for moving heavy articles a machine called a crane. A crane is

Shickle-Harrison & Howard Iron Co. v. Beck.

two large steel girders forming an arch over the width of the room. The girders rest on wheels and run on a track, which is on both sides of the room, at a height of from twenty to twenty-five feet above the ground. The entire structure is supported by steel columns. The two girders composing the crane are about five feet apart. On top of these two girders is a track, and on this track is the hoist of the crane, referred to in the evidence as the "brake," "heavy hoist" and "auxiliary drum.". The motive power of the crane is electricity. The crane moving in this case east and west on the track above the columns, and the hoist moving north and south across the girders, makes it possible for the craneman to drop his hoist at any place in the room. The wheels on which the crane rests have a plain running surface on the inside, similar to a car-wheel. The cog-wheels, which connect with the line shaft that operates the wheels, are bolted to, and are on the outside of the wheels on which the crane rests, making it a double wheel. The crane is operated from a cage, which is hung from the girders and is immediately in front of the cog-wheels.

At the time of the injury, March 19, 1901, appellee had been in the employ of appellant for twelve or fifteen months. During that time he worked as a gas maker, then in the chipping department, in the annealing room, and as a machinist's helper in and about the shops. On Monday evening, March 17, 1901, he was directed by the foreman of the machine department to service with Connelly, a craneman or foreman in charge of one of the cranes, for the express purpose that Connelly should instruct him in the use and operation of the crane that he might learn and become fitted for that service. Pending such training or apprenticeship, appellee was under the control and direction of Connelly, the foreman, and necessarily under requirement of obedience to his orders. His work was from six o'clock in the evening until seven the next morning. About two o'clock of the second morning while on the crane above the cage, appellee's foot was caught in the cog-wheels described, and received the injury for which this suit was brought.

The declaration consists of six counts, substantially the same in formal allegation and inducement. The first count alleges, "that on the twentieth day of March, A. D. 1901, County of St. Clair, State of Illinois, the defendant owned and operated a certain steel plant; that the plaintiff was in the employ of the defendant and had been for eighteen months prior to said date, as a laborer in and around the several different departments in said plant; that on the date aforesaid the defendant undertook to instruct him how to operate a certain machine known as a crane, which machine was used by the defendant in its said plant to carry heavy articles of steel from place to place; that the plaintiff was ignorant of the workings of the machine and the construction and operation of the same, and that it was the duty of defendant to instruct plaintiff in what manner said machine was operated and to instruct and show him the danger in operating said machine, but contrary to its duty in this regard the defendant carelessly and negligently failed and omitted to point out and discover to the plaintiff the dangerous parts of the machine, and omitted to warn plaintiff that there was danger in operation thereof, and negligently allowed the plaintiff to remain around said machine engaged in trying to ascertain the nature and workings thereof until he was injured; that on the day aforesaid while he was on said machine under and by directions of the defendant he undertook to climb down off said machine for the purpose of procuring an oil can to be by the defendant used in oiling said machine, and while in the exercise of due care and without knowledge of any danger and without knowledge of the makeup of said machine, or that the same had an uncovered cog, in which he might be injured, while getting down, his right foot was caught in the uncovered cog, his little toe severed from his foot, permanently injuring said foot; that he was ordered by the foreman in charge of said machine to go after the oil can; that he had no knowledge of any danger in attempting to descend from said machine; that the defendant had such knowledge; that on account of the injury to plaintiff he

was compelled to remain in a hospital four months, and that he has laid out and expended the sum of $100 in trying to heal his injuries, to his damage in the sum of $1,999." The second count charges negligence of defendant in failing to provide sufficient light; third, in failing to instruct the plaintiff or warn him of dangers and to provide sufficient light; the fourth is based upon the negligence of the foreman, Connelly, in allowing plaintiff to descend from the machine and while he was thus exposed negligently causing the machine to move; the fifth alleges the negligence of Connelly in moving the machine without notice to the plaintiff; and the sixth count alleges negligence in failing to have the cog-wheel properly and safely guarded.

To this declaration defendant pleaded the general issue. The case was tried by jury. At the close of plaintiff's evidence and again at the close of all the evidence defendant moved the court for a peremptory instruction to the jury to find defendant not guilty. The motion was denied and the instruction refused. The jury returned a verdict for plaintiff for $1,000 damages. Motion by defendant for new trial overruled, and judgment on the verdict for plaintiff, from which defendant appealed.

Numerous errors have been assigned, and we now consider such as have been presented in argument. Whether Connelly, the craneman, or Doran, the machinist, both or either, were fellow-servants of plaintiff under the evidence in this case, was a question of fact for the jury. So also was the question of whether or not the plaintiff was in the exercise of ordinary care. The testimony of the plaintiff, if credited, proves that he left the cage and was in the position and about the business permitted and directed by Connelly, his immediate foreman and superior, under whose orders and control he had been placed by the defendant. If he is to be credited, the place was extremely hazardous, especially by reason of the insufficiency of the light above the crane. This was the testimony of the plaintiff, and though denied and contradicted in the main by two witnesses, Connelly and Doran, it cannot be said there was

not evidence tending to prove the allegations of the plaintiff. In such state of the record there was no error in refusing the peremptory instruction asked by the defendant. Wilbur v. Ewin, 183 Ill. 626; Landgraff v. Kuh, 188 Ill. 484; Central Ry. Co. v. Knowles, 191 Ill. 241; St. Louis N. Stock Yards v. Godfrey, 101 App. 40. Nor are we of opinion that the verdict is so manifestly against the weight of evidence as to authorize the court to set aside the judgment and award a new trial. It is the established rule under the decisions in this state, that the higher courts will not reverse the judgment of the trial court where the evidence of the successful party when considered by itself, is clearly sufficient to sustain the verdict. Calvert v. Carpenter, 96 Ill. 63. In the language of the court, "to do this would be to dispense with the essential functions of a jury, and thus destroy its utility altogether." The plaintiff was put at work on the crane with Connelly *to learn its use and operation* preparatory, it may be assumed, of his subsequent employment as a craneman. He was without experience in the use and appliances of the machine, with only such knowledge of the dangers incident to its operation as might be gained from casual observation while engaged in other and a very different kind of occupation in and about the building. The measure of appellant's duty to warn and protect him from the dangers incident to the operation of the machine must be determined from the particular circumstances of the case and plaintiff's position as a novice in his relation to Connelly the foreman. It may be held, as contended by appellant, that Connelly was under no duty and was not bound to warn the plaintiff against dangers that were obvious and apparent to one of ordinary intelligence, but in determining what dangers were obvious and to be understood, the experience or lack of experience of the plaintiff must be kept in mind. He may be held to avoid the dangers which he knew or which in the exercise of reasonable care he should have known. But he may complain of exposure to perils known only to his superior, be they ever so apparent to the more experienced.

If the evidence tended to show that plaintiff's injury was the result of his lack of experience and in no way due to his own negligence or want of prudence, the verdict must stand; for while he was under instruction, it was the duty of the defendant to warn him of dangers incidental to that business and such as could be known to and appreciated only through experience.

We are inclined to the opinion that the doctrine of fellow-servants is without application in this case. Certainly under the evidence it was not for the court to hold, as a matter of law, that plaintiff and Connelly were fellow-servants.

In the Driscoll case, 176 Ill. 330, cited by appellant, it was held that "a plaintiff must recover, if at all, upon the case made by his declaration; and in the application of this rule to actions for negligence, plaintiff cannot allege a specific act of negligence and recover upon proof of negligence of a different character." If that rule was ever questioned it is not within authority which we now call to mind. In application of the rule in the Driscoll case, the court held that the peremptory instruction "to find for the defendant under each count of the declaration should have been given and it was error to refuse it." Another rule of long standing established by authority of the statute and decisions, and equally applicable in this case, is that a verdict may not be set aside or reversed if one or more counts in the declaration be sufficient to sustain it. To avail itself of the want of sufficient evidence to sustain a part of the counts only, the defendant should have moved for an instruction as to each of the counts not sustained. Under the motion made in this case the court was not required to limit the evidence to any particular count or counts.

Defendant's third refused instruction reads: "If the jury believe from the evidence that the plaintiff voluntarily went to work to repair the crane, that the movements and operations of the crane were controlled by a man known as the craneman, and that the craneman could start or stop the machinery connected with the crane, and if you further

believe from the evidence that while the plaintiff was in
the act of repairing said crane or after he had finished the
repairs on said crane, that in response to an inquiry from
the craneman was everything all right, and plaintiff an-
swered, ' All right, let her go,' or words to that effect, and
that thereupon the craneman put the crane and the ma-
chinery connected therewith in motion and plaintiff was
injured thereby, then he cannot recover, and your verdict
will be for the defendant." This instruction was properly
refused for the reason that it assumes the existence of a dis-
puted fact, the inquiry of the craneman, " was everything
all right ? " It was argumentative and misleading in giv-
ing undue prominence to a part of the evidence, and within
the criticism of the Supreme and Appellate Courts in many
decisions.

The plaintiff's fourth given instruction in the matter com-
plained of is in exact conformity with the allegations in the
declaration to which no demurrer was filed. Besides, the
point of the objection is met and cured by the defendant's
given instructions. The jury could not have been misled
to the prejudice of defendant by this instruction.

Finding no prejudicial errors in the record, the judgment
of the Circuit Court will be affirmed.

*Affirmed.*