## Swift & Company v. Johanna O'Brien, Administratrix.

1.  PEREMPTORY INSTRUCTION—*when should be refused.* A peremptory instruction should be refused where there is evidence tending to show the plaintiff's right to recover.

2.  SAFE PLACE TO WORK—*when duty of one not master to furnish reasonably.* One who authorizes work to be done, controls the place where it is done, directs what and how much shall be done, and when it shall be done, sustains such a relation to one whose duty it is to assist in the doing of such work as obligates him to exercise reasonable care to furnish a reasonably safe place to work, even though the person whose duty it is so· to assist is not directly in his employ.

3.  SAFE PLACE TO WORK—*extent of master's obligation to furnish.* It is not the absolute duty of the master to furnish a reasonably safe place to work; it is only his duty to exercise reasonable care to furnish such a place.

4.  RES IPSA LOQUITUR—*when doctrine of, does not apply.* The placing of a coal house in close proximity to railroad tracks does not raise a presumption of negligence.

5.  NEGLIGENCE—*extent of proof of, required.* It is not incumbent upon the plaintiff to prove all the averments of negligence made in the declaration; it is enough if any negligence charged in the declaration is established.

6.  ORDINARY CARE—*what sufficiently establishes exercise of.* Where the circumstances attending the accident are in evidence and show no fault on the part of the party injured, this will justify an inference and be accepted as proof of the exercise of due care.

7.  EVIDENCE—*may be competent notwithstanding it tends to prove affirmative negligence not counted upon.* Evidence may be competent for the purpose of establishing the environment of and conditions surrounding the injury in question, notwithstanding it may likewise tend to establish affirmative evidence not relied upon in the declaration.

8. INSTRUCTIONS—*must not ignore material issue.* An instruction which directs a verdict for the plaintiff if the facts specified therein are found, is erroneous, if it omits a material issue which must be adjudged in favor of the plaintiff before he is entitled to recover.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1905. Reversed and remanded. Opinion filed March 22, 1906.

A. & J. F. LEE and C. E. POPE, for appellant.

H. L. BROWNING, L. D. TURNER and FORMAN & WHITNEL, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of St. Clair County, by appellee against appellant, to recover for the death of appellee's intestate. Trial by jury. Verdict and judgment in favor of appellee for the sum of $3,000.

The declaration charges in substance, that appellant was possessed of and using and operating a packing plant and appurtenances, consisting among other things of certain railroad tracks, and a building with wall and shed used as a coal house; that appellant negligently constructed and maintained one of its railroad tracks and its coal house in such close proximity to each other that there was not sufficient space between the side of a car passing or standing on the track and the coal house to permit switchmen engaged in coupling and uncoupling cars to pass with reasonable safety between cars on the track and the coal house, and it had negligently permitted lumps of coal, screenings and slack to accumulate along the track adjacent to and at the end of the coal house, causing the surface to be rough and uneven, and had permitted ice to form and remain there; that appellee's intestate had no knowledge of these conditions and that appellant had such knowledge or by the exercise of reasonable care and diligence would have known; that appellee's intestate was a switchman employed by the National Stock Yards, and while engaged in switching and

coupling cars on the track near the coal house and while in the discharge of his duty as such switchman and in the exercise of due care and caution for his own safety, he unavoidably stumbled over the rough and uneven surface and slipped upon the ice and was caught by the moving cars and thrown between the cars and coal house and crushed and injured, causing his death. To this declaration appellant pleaded the general issue.

At the close of appellee's evidence appellant moved the court to direct the jury to return a verdict of " not guilty." The court denied the motion, appellant declined to introduce any evidence, and the case was submitted to the jury, upon appellee's evidence, arguments of counsel *pro* and *con*, and instructions of the court, resulting in a verdict for appellee as above noted. Counsel for appellant assign the refusal of the trial court to direct a verdict, as error, and this raises the more important questions in this case.

" It is well settled in this state, that an instruction to the jury to find for the defendant should be refused where there is evidence tending to show the plaintiff's right to recover." Landgraf v. Kuh, 188 Ill. 484; Wilbor v. Ewen, 183 Ill. 626; St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40.

Counsel suggest that the evidence shows that the St. Louis National Stock Yards Company hired and paid appellee's intestate and it alone had power to discharge, and that he was under the control of the foreman of that company's crew while doing the work on appellant's premises. Therefore appellant owed no duty as to his safety, except to refrain from purposely injuring him.

Under the facts of this case we think that counsel's position is not well taken. The evidence tends to prove that the tracks and structures inside of appellant's plant were made, owned, maintained and controlled by appellant, and that its tracks connected with the St. Louis National Stock Yards tracks, and that some arrangement existed between appellant and that company whereby it became the duty of that company's switching crews to enter appellant's prem-

ises and do switching in its yards, when directed to do so by appellant's foreman. We quote from the testimony: "At the time O'Brien was injured the Stock Yards Company furnished an engine to do the work there, for Swift and Company, under the supervision of Swift and Company's yard master. * * * The men were sent there to do the switching or moving of cars, as directed by Swift and Company." Appellant's foreman testified: "It was the practice and my duty at the time of this accident to tell the foreman of the engine crew what cars we wanted moved; I instructed the foreman as to where to set the cars and which cars we wanted taken from the place; I did not undertake to tell the foreman of the switching crew how he should make the movements of the cars, or what orders he should give to his subordinates."

From the foregoing it appears that appellant furnished the work to be done, furnished and controlled the place where it must be done, directed what and how much should be done and when it should be done, and it sustained such relation to appellee's intestate as to make it his duty to assist in doing what it directed, and at the time and place it might direct. And it must be borne in mind here, that the case is not based upon any charge of negligence as to the movements of the cars, or the giving of orders by the foreman of the switching crew as to the manner of doing the work. The sole charge upon which the suit is based is the negligent failure to furnish a reasonably safe place in which to perform the duties required of appellee's intestate, while engaged in this particular service. We are of opinion that this state of facts imposed on appellant the duty to exercise reasonable care and diligence to provide for appellee's intestate a reasonably safe place in which to perform his work. The following cases cited by counsel for appellee more or less directly support this view: Spry Lumber Co. v. Duggan, 182 Ill. 218; Village of Jefferson v. Chapman, 127 Ill. 438.

Counsel insist that there is no evidence tending to prove that defendant was guilty of the negligence charged in the

declaration. The declaration charges negligence in the construction and maintaining of the track and coal house in so close proximity to each other; in suffering the surface to be made rough and uneven by the accumulation of coal, screenings and slack, and by permitting ice to form and remain at the place of the injury.

As to the proximity of the track and the coal house, the most that the evidence tends to prove is, that they were so close together that there would be but six or eight inches of space between the side of the smallest car when on the track, and the wall, and that a large car in passing along the track would rub against the wall, and that this condition made it dangerous. When considered in connection with the other facts of this case and in the light of the rule laid down by the Supreme Court in the very recent case of M. & O. R. R. Co. v. Vallowe, 214 Ill. 124, the mere fact of the placing and maintaining of these structures so close together as to be dangerous does not raise the presumption of negligence. In that case the court says: "The defendant was bound to exercise ordinary care to provide a reasonably safe place for plaintiff to do his work, but if reasonable care was exercised and there was no fault or negligence on the part of defendant in having its posts near the track it would not be liable merely because there was danger." The court in that case discusses the line of authorities upon which all the cases of this class rest, and brings out a meaning that was not wholly clear in some of them before. And in that case the court further says: "It was not sufficient to show the danger on account of the location of the posts, but it was also necessary to show that danger arose from some fault or negligence of defendant." The conclusion reached in that case is, that where such structural arrangement is necessary and proper for the purposes for which it is used then it is not negligence to maintain it, although it may be dangerous.

It is true that in many cases negligence may be inferred from proof of dangerous proximity of structures, but this is only where the surrounding conditions are such as to

make the necessity and propriety of such structural arrangements appear to be improbable. The case at bar is not such a case. It was not a railroad in the ordinary sense of that term. It was a mere piece of railroad track in use as an appurtenance to a manufacturing plant, within the enclosure of the plant. In such case, in the absence of anything to evidence the contrary, the presumption must be that the structural programme adopted and used is in accordance with the practical necessities of the case; and in such case, in absence of anything to evidence the contrary, that which is substantially more convenient for the purposes is reasonably necessary, and that which is substantially better suited to the purpose is reasonably proper. We are of opinion that there is no evidence in this record tending to prove negligence on the part of appellant with respect to the proximity of the track and the coal house.

This, however, is not necessarily fatal to appellee's case, for it was not incumbent upon her to prove all the averments in her declaration relative to negligence of appellant. It is sufficient if she has proven that appellant was negligent in any one of the ways averred in her declaration. C. & E. I. R. R. Co. v. Rains, 106 Ill. App. 539. And the failure to prove negligence on the part of appellant with respect to the proximity of these structures does not wholly eliminate the fact of such proximity of these structures from the case. It was proper to aver and prove it as a part of the general environment and one of the incidental factors of the case.

We are of opinion that the evidence tends to prove both the other charges of negligence made in the declaration. A number of witnesses testify to more or less accumulation of coal, screenings and slack, and nearly all of them speak of the accumulation of ice. One witness said: "Some slack had fallen down there and was covered with ice." Another one said: "There was a little ice at the corner of the coal house, I do not know how much ice there was there." And another said: "I know there was water running down there all the time, * * * it came from

above where the exhaust pipe came through the roof; it would drop down from the roof and freeze." And still another one said: "Through the cold weather there is always dripping and freezing there." All the witnesses agree that at the time of the injury the weather was very cold.

Counsel insist that the evidence does not tend to prove either that appellee's intestate was in the exercise of due care and caution for his own safety, or that any negligence charged in the declaration was the proximate cause of the injury. The evidence tends to prove that a car was being "backed up" on the track to be coupled to another car at the corner of the coal house and it was the duty of deceased to make this coupling. "The ground there was inclined from the rail up to the building," there were "cinders piled up all around there and there was ice on the cinders." As the car was backing in, the deceased raised the lever to make the coupling and just as the cars were about hitting, he slipped and turned and the car caught him and threw him against the building, between the building and the car and crushed him. The evidence further shows that this occurred in the day time, that the day was clear, that there was nothing to obstruct the view of the conditions or surrounding, that the work was being done in the usual manner, and not hurriedly, and that the coupling could have been made on the opposite side where the conditions were less dangerous. And it also tends to show that deceased was not acquainted in that part of the yard, that this was the first trip he had made there, that he was on the usual and proper side of the car for making the coupling.

Where the circumstances attending the accident are in evidence and show no fault on the part of the party injured, this will justify an inference and be accepted as proof of the exercise of due care. C. & A. R. R. Co. v. Crowder, 49 Ill. App. 154.

The circumstances disclosed here show no fault on the part of deceased, unless it be in failing to see, in failing to heed the dangerous conditions around him. Whether he

Swift & Co. v. O'Brien.

did in fact see these dangerous conditions or by the exercise of ordinary care would have seen them is the *crux* of this feature of the case, but we think it is a question of fact for the jury and not of law for the court.

There is no proof in this record that deceased did see the piles of slack and ice that imperiled him or that he had any knowledge of them, and in such case it will not be presumed that he did. In C. & E. I. R. R. Co. v. Hines, 132 Ill. 161 (169), it is said: "Unless it shall appear from the evidence that he had such knowledge, it will not be presumed, since no one is presumed to knowingly incur physical pain and death, when he can avoid it at his discretion." This same rule is laid down in many cases in this state, both before and since that case.

Counsel insist that it was day time and a clear day and that deceased could have seen the piles of slack and ice and the other dangerous surroundings if he had looked, and that he failed to exercise reasonable care in not looking. It is doubtless true that if he had been warned or had suspected such a state of things and had been looking for them he could easily have seen them, but·the question is, was he guilty of negligence *per se* in not looking, under the circumstances. Upon a state of facts much like the facts in this case, Mr. Justice Scholfield, speaking for the court in the case last above cited, said: "The burden of furnishing safe * * * surroundings is upon the master, and while the master is not to be held liable for defects and dangers of which the servant is fully informed, yet the servant is authorized to rely upon the acts of the master in that respect, and is under no primary obligation to investigate * * * the safety of the * * * surroundings, in the absence of notice that there is something wrong in that respect. And, necessarily, much more is the servant entitled to assume that his master has furnished him with suitable and safe * * * surroundings, and relieved him from investigation and inquiry in that regard, where, as in the present instance, the performance of his duties requires constancy of attention to other matters. A man whose

attention is constantly directed to moving cars, and their coupling and uncoupling, cannot possibly give much attention to ties, switch bars, etc." (or to piles of slack and ice). We think it was proper for the trial court to submit this question to the jury. And as to the proximate cause, assuming the facts to be as the evidence tends to prove them, that is apparent, without discussion or statement. The foregoing discussion disposes of the question as to assumed risk, as well as that of contributory negligence or due care, for in this particular case both these questions are dependent upon the same controlling facts.

Counsel complain of the rulings of the trial court in the matter of admitting and rejecting evidence. This complaint is not wholly without just cause. Appellee was permitted over objections of appellant, to prove the conditions between the tracks at the west end, and to prove the condition as to light in the shed, and much testimony was admitted to prove that one rail of the track was slightly higher than the other. This fact was proven over and over again and stress placed upon it as though it was a most important factor in the case. None of these were charged against appellant in the declaration, and not directly embraced within any charge, and do not appear to have been of any material value in the case for any proper purpose. The admission of this evidence tended to raise false issues and may have confused the jury. But in this we do not hold, that the mere fact that these conditions were not charged in the declaration, nor embraced within any charge, made it the duty of the court to exclude all evidence as to them. In cases of this character it is always proper to admit evidence to prove any feature of the environment that may shed any light upon the material issue of fact involved in the pleadings, or that may properly arise during the progress of the trial, and the mere incidental proof of many facts of this character which may turn out to be wholly immaterial, will not constitute material error; but in a close case such fact, if wholly irrelevant to any material issue or to any fact tending directly

or indirectly to prove such issue, ought not to be magnified and itself raised to the dignity and importance of an issue. The trial court sustained objections to certain questions asked by counsel for appellant on cross-examination of appellee's witnesses. These we shall not take the time and space to discuss in detail. As to a few of the questions the rule applied by the court was too narrow. The court erred in sustaining objections to the following questions: "Q. Is it not his duty, Mr. Ragen, when there is an obstruction along the side of the track, like a house, to go on the opposite side and make the coupling?" "Q. What was the custom, Mr. Ragen, in regard to making couplings on the opposite side, when there is some obstruction on the side, like a house on the side of the track?" "Q. There was about thirty acres in that enclosure, was there not?" "Q. Did you see ice at any other place about the yard there that day?" As to all the others we think the court ruled properly.

Counsel challenge the first, second, third, and sixth instructions given on behalf of appellee. The challenge is well placed in one respect, as to the first and second. They both lay it down as the duty of a master in such case as this to furnish the servant "a reasonably safe place in which to work." In this material respect they are both erroneous, otherwise we think that they are good. It is not the master's duty absolutely to furnish a reasonably safe place. The full measure of his duty is "to exercise ordinary care" to provide (or "furnish") a reasonably safe place. M. & O. R. R. Co. v. Vallowe, 214 Ill. 124 (126); Himrod Coal Co. v. Clingan, 114 Ill. App. 568 (574).

Appellee's sixth instruction is as follows:

"If the jury believe from the preponderance of the evidence that the deceased, Cornelius O'Brien, immediately before and at the time of his injury was in the exercise of reasonable care for his own safety, as explained in other of these instructions, and if you further believe from the preponderance of the evidence, that the defendant, Swift & Company, was guilty of negligence as charged in the second or third count of plaintiff's declaration, and that such

negligence was the proximate cause of the injury and death of deceased as alleged in said counts of plaintiff's declaration, and you further believe from the preponderance of the evidence that the deceased contributed to his next of kin as alleged in the second or third counts of plaintiff's declaration, then in such case you should find the issues in favor of plaintiff, and if you so find the issues in favor of the plaintiff, you shall assess her damages at such sum as you believe will be compensation for the pecuniary loss or damage shown by the evidence in the case not to exceed the amount sued for."

This instruction is bad in one fatally material respect. It undertakes to specify, state, all the conditions necessary to a recovery, and authorizes the jury, if they find these to have been proven, to find for the plaintiff and assess her damages, etc.

The instruction omits the material averment in the declaration, that deceased had no knowledge of the dangerous conditions causing his injury. Without proof of this fact plaintiff had no right to recover, and this instruction authorizes a recovery without such proof. The whole defense of assumed risk is based upon the traverse of that averment in the declaration, and the facts disclosed by the evidence show less strength in appellee's case at that point than in any other part of the record. This instruction took that question wholly from the jury, and it is an instruction of that character that cannot be cured by other instructions which may correctly state the law. It assumes to state the whole case and authorizes a finding embracing the whole case.

Counsel for appellee insist that this instruction is warranted by the rule that " the law does not recognize the master's negligence as a risk incident to the servant's employment." This rule has no application where the servant has full knowledge of the master's negligence and continues in his service without promise, etc. Concerning an instruction, which on the whole was much less palpably bad than the one here, in the same respect, the Supreme Court in C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492 (502), said: " It took from the jury all assumptions of risk on account

of the knowledge of the danger and continuing in the service without objection. Contributory negligence and assumption of risk are entirely different things in the law. Although the two questions may both arise under the facts of a case, yet they are wholly separate and distinct. Every person suing for a personal injury must show that he was in the exercise of ordinary care and caution for his own safety, so that the question of contributory negligence may be involved in every case; but an employee may have assumed a risk by virtue of his employment, or by continuing in such employment with knowledge of the defect and danger, and if he is injured thereby, although in the exercise of the highest degree of care and caution and without any negligence, yet he cannot recover."

We think the third instruction as given was not misleading, especially when considered in connection with the seventh given on behalf of appellant, and these two instructions are of that class that should be considered together.

Complaint is made of the modification of one instruction asked on behalf of appellant, and of the refusal to give a number of others. We are of opinion that this complaint is not well founded. These instructions raise no question worthy of discussion, that has not been discussed herein.

A number of questions are raised upon this record which are not likely to arise in another trial, and therefore we do not feel called upon to add to the length of this opinion by discussing them here.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*